**O**

# United States District Court
# Central District of California

| | |
|---|---|
| LOVADA WORKMAN,<br><br>        Plaintiff,<br><br>   v.<br><br>DEARBORN NATIONAL LIFE<br>INSURANCE CO.,<br><br>        Defendant. | Case No. 2:17-cv-04515-ODW (SSx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [31][32]** |

## I.    INTRODUCTION

Plaintiff Lovada Workman ("Workman"), brings this action against Defendant Dearborn National Life Insurance Co. ("Dearborn") to recover the interest Dearborn earned on the life insurance proceeds and disgorgement of any profits Dearborn may have realized by the wrongful retention of such benefits.  (*See generally* First Am. Compl. ("FAC") 8, ECF No. 12.)  Workman alleges claims against Dearborn for: (1) Breach of Fiduciary Duty and Equitable Relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. section 1132(a); and (2) Unjust Enrichment.  (FAC ¶¶ 9–31.)

Pending before the Court are the Parties' cross Motions for Summary Judgment to determine whether Workman is owed prejudgment interest and disgorgement of

Dearborn's profits.  (*See* Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 31; *see* Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 32.)  For the following reasons, the Court **GRANTS** Dearborn's Motion and **DENIES** Workman's Motion.[1]

## II.    BACKGROUND[2]

John Borum ("Borum") died on June 30, 2002.  (Joint Stip. ¶ 1.)  Workman, Borum's ex-wife, was the sole designated beneficiary on a life insurance policy provided to Borum by Dearborn.  (Joint Stip. ¶ 2.)  Fourteen years later, in 2016, Workman finally learned of Borum's death.  (Pl.'s Separate Statement in Support of Mot. ("Pl.'s SS") ¶ 7, ECF No. 42-2.)  Workman then submitted her claim to Dearborn for life insurance benefits.  (Joint Stip. ¶ 3.)  However, on June 15, 2016, Dearborn denied Workman's claim, but on February 27, 2017, Dearborn overturned its denial and paid Workman $37,000 for the policy benefit (the "Policy Benefit") and $179.91 in interest for the period from June 1, 2016 through the date of the Policy Benefit payment.  (Pl.'s SS ¶ 9; Joint Stip. ¶ 4.)

Pursuant to California Insurance Code section 10172.5, Workman contends that Dearborn owes additional interest in the amount of $9,085.19.  (Joint Stip. ¶¶ 5, 8.)  Accordingly, on March 28, 2017, Workman appealed Dearborn's decision to pay interest on the monies owed as of June 1, 2016, as opposed to Borum's date of death.  (Pl.'s SS ¶ 22.)  On April 12, 2017, Dearborn denied Workman's appeal.  (Pl.'s SS ¶ 27.)  Nevertheless, Dearborn acknowledged that section 10172.5 applies to policies issued in California, but that the statute would only make sense if written notice of the claim and proof of loss was timely given.  (Pl.'s SS ¶ 27; Pl.'s Mot. 8.)  Dearborn also asserts that it did not have constructive notice of Borum's death until Workman submitted her claim.  (Pl.'s SS ¶ 24.)  Therefore, Dearborn asserts that it only owed interest as of June 1, 2016, and not as of June 30, 2002.  (*See* Def.'s Mot. 2–3.)

---

[1] After considering the papers filed in connection with the Motions, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

[2] Parties have stipulated to the pertinent facts.  (*See* Stip. Regarding Facts for Dispositive Motion Proceedings ("Joint Stip."), ECF No. 31-3.).

On June 19, 2017, Workman brought this action against Dearborn and later filed a First Amended Complaint ("FAC"). (Compl., ECF No. 1; FAC.) On September 14, 2017, Dearborn brought a motion to dismiss, and the Court denied the motion on February 5, 2018. (Mot. to Dismiss, ECF No. 14; Order, ECF No. 18.) On March 11, 2019, both Parties moved for summary judgement. (Def.'s Mot.; Pl.'s Mot.) These motions are now before the Court.

## III.    LEGAL STANDARD[3]

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a

---

[3] The Court **OVERRULES** all boilerplate objections to evidence. (*See* Scheduling and Case Management Order 9, ECF No. 18.) To the extent the Court relies without discussion on evidence to which the Parties have objected, the Court **OVERRULES** the relevant objections. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118–19 (E.D. Cal. 2006) ("[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself."). As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on the disputed evidence.

material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

## IV. DISCUSSION

Workman and Dearborn both move for summary judgment on the application of the California Insurance Code section 10172.5 to the present facts. (*See* Pl.'s Mot.; Def.'s Mot.) Additionally, Workman moves for summary judgment on her unjust enrichment claim. (*See* Pl.'s Mot. 22–24.) Dearborn also moves for summary judgment to establish that Workman is not entitled to attorneys' fees. (Def.'s Mot. 7–8.) The Court addresses the Parties' arguments in turn.

## A.    WHETHER DEARBORN VIOLATED SECTION 10172.5[4]

Simply, the dispute boils down to whether Dearborn's failure to pay Workman within 30 days after Borum's death triggers section 10172.5 requirement to pay statutory interest.  (Pl.'s Mot. 15–22.)  Therefore, at issue is whether notice or submission of a claim is a condition precedent for triggering section 10172.5.  (*See* Pl.'s Mot.; Def.'s Mot.)  Workman asserts that it is not.  (Pl.'s Mot. 15.)  Whereas Dearborn contends that section 10172.5 requires a notice of claim before the section is triggered.  (Def.'s Mot. 4.)  The Court now turns to the language of the statute to determine whether notice or a claim is a condition precedent.

### 1.    Plain Meaning of Section 10172.5

Here at issue is whether section 10172.5's text and plain meaning are unambiguous and readily ascertainable.  Workman asserts that the plain language of the statute requires payment of interest from the date of death, not from the date of notice of the claim.  (Pl.'s Reply 3, ECF No. 48.)  Whereas Dearborn contends that the plain language of the statute indicates that section 10172.5 only triggers where an insurer fails or refuses to pay a submitted claim.  (Def.'s Opp'n to Pl.'s Mot. ("Def.'s Opp'n") 4–5, ECF No. 45.)

When a federal court interprets a California statute, California's rules of statutory construction and interpretation apply.  *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001).  Under California law, the touchstone of statutory construction is ascertaining the legislature's intent in order to effectuate the law's purpose.  *Imperial Merch. Servs., Inc. v. Hunt*, 47 Cal. 4th 381, 387 (2009).  The court begins by looking at the statute's words and giving them their usual and ordinary meaning.  *Id.*  The statute's text and plain meaning control unless they are ambiguous or their literal meaning conflicts with the statute's evident purpose.  *Id.*  If the statute is ambiguous, the court may turn to extrinsic aids, such as legislative history, the

---

[4] The Court **GRANTS** Workman's request for judicial notice of the statute's legislative history. (Req. for Judicial Notice, ECF No. 32-3; *See, e.g., Chaker v. Crogan*, 428 F.3d 1215, 1223 n. 6 (9th Cir. 2005) (taking judicial notice of a California statute's legislative history).)

statute's purpose, and public policy.  *Id*.  Section 10172.5 states:

> [E]ach insurer admitted to transact life insurance, credit life insurance, or accidental death insurance in this state that **fails or refuses to pay** the proceeds of, or payments under, any policy of life insurance issued by it **within 30 days after the date of death** of the insured **shall pay interest, at a rate not less than the then current rate of interest on death proceeds** left on deposit with the insurer computed from the date of the insured's death, on any moneys payable and unpaid after the expiration of the 30-day period.

Cal. Ins. Code § 10172.5 (emphasis added).

Because the statute does not include express language requiring the beneficiary to submit a claim, the Court concludes that the text is susceptible to both interpretations, and therefore is ambiguous.  *Burton v. Prudential Ins. Co. of Am.*, 669 F. App'x 829 (9th Cir. 2016) (affirming the district court's determination that the text of section 10172.5 is ambiguous); *Jimison v. Am. Gen. Life Ins. Co.*, No. 15-cv-01620-JAH-NLS, 2017 WL 4227002, at *5 (S.D. Cal. Sept. 21, 2017) (stating that the text of section 10172.5 is ambiguous); *McMillen v. Americo Fin. Life & Annuity Ins. Co.*, No. 1:13-CV-1189 LJO JLT, 2014 WL 1270535, at *9 (E.D. Cal. Mar. 26, 2014) (stating that the text of section 10172.5 is ambiguous).  Accordingly, the Court now turns to "extrinsic aids, including the ostensible objects to be achieved and the legislative history."  *See Burton*, 669 F. App'x at 829.

## 2.     Legislative Intent of Section 10172.5

Dearborn asserts that the *Jiminson* court determined that the legislature sought to penalize insurers who delayed in paying claims.  (Def.'s Opp'n 6 (citing *Jiminson*, 2017 WL 4227002).)  Consequently, even though the "statute does not have express language requiring the beneficiary submit a claim," the words "fail or refuse" "indicate[] the receipt of notice or request," and hence, failure to do so imposes a penalty. *Jiminson*, 2017 WL 4227002, at *5.  Workman asserts not so, rather *Jiminson* is distinguishable because Workman has proffered facts and evidence that contradicts the finding that the statutory interest is a penalty.  (Pl.'s Mot. 19.)  Therefore, the

section does not require notice of a claim to trigger the requirement to pay statutory interest. (*See* Pl.'s Mot. 22.)

However, this Court finds both Parties miss the mark. The true issue is not whether the section as applied here is a penalty on Dearborn, but rather if legislators intended the section to apply even when insurers were entirely unaware of a claim. For the reasons that follow, the Court finds that the legislative purpose of section 10172.5 was not necessarily to penalize insurers, but instead, to minimize any incentive for both the insurer and the beneficiary to delay settlement of benefit claims. *See McMillen v. Americo Fin. Life & Annuity Ins. Co.*, No. 1:13-CV-1189 LJO JLT, 2014 WL 1270535, at *10 (E.D. Cal. Mar. 26, 2014). Therefore, the legislators did not intend the section to apply when insurers were entirely unaware of a claim.

Citing only *Burton*, the *Jiminson* court makes two key determinations: (1) the legislature sought to penalize insurers who delayed in paying claims; (2) legislative history establishes that to trigger the statutory interest penalty a claim must first be made to the insurer. *Jiminson*, 2017 WL 4227002, at *5. Foremost, the Ninth Circuit stated that the legislative "purpose of section 10172.5 was to 'provide a disincentive to a practice of some insurance companies of intentionally withholding proceeds from beneficiaries.'" *Burton v. Prudential Ins. Co. of Am.*, 669 F. App'x at 830 (quoting Letter from Assemblyman Alan Sieroty to Governor Edmund G. Brown, dated September 11, 1975). Accordingly, Ninth Circuit did not expressly conclude that the legislature sought to penalize insurers or that a claim must first be made to the insurer to trigger section 10172.5. *See generally id*. Therefore, this Court respectfully declines to adopt these two determinations. *Jiminson*, 2017 WL 4227002, at *5.

Second but no less crucial, the legislative history reveals that legislators considered and rejected a fixed 7% interest rate because they feared 7% was too high and might encourage beneficiaries to delay filing claims in order to reap above market interest rates. *McMillen*, 2014 WL 1270535, at *9. The rejection of the 7% fixed interest rate tends to suggest that the legislature did not intend to penalize insurers.

*See People v. Mendoza*, 23 Cal. 4th 896, 916 (2000) (legislature intends to change the meaning of a law when it alters the statutory language).  Furthermore, AB 709 proposed that "the obligation of an insurer to pay interest on death benefits is 'triggered' only by its failure to settle death claims within 30 days." *Id.* at \*10 (citing Assem. Bill 709, 1974-1975 Reg. Sess. (Cal. Feb. 5, 1975).  Naturally, an insurer cannot settle a death claim without first receiving notice, thereby, supporting the presumption that notice is a condition precedent to trigger section 10172.5.  The legislative history further reveals that the legislature recognized that the existing law required an insurer to "either pay a claim within 30 days of the date of death of the insured, with limited exceptions, or pay interest at a specified rate.  Assem. Bill Analysis 2384, 2003-2004 Reg. Sess. (Cal. Aug. 19, 2004).  Thus, the legislature contemplated instances where an insurer could not pay a claim within 30 days of the date of death.

To summarize, the Ninth Circuit is silent as to whether the legislative purpose of the statute is to penalize, or whether filing a claim is a condition precedent to trigger section 10172.5.  *Burton*, 669 F. App'x at 830 n. 3 (declining to determine whether defendant failed or refused to pay plaintiff's claim).  Next, because the plaintiff failed to provide any authority, the *Jiminson* Court's review of the legislative history is incomplete and non-binding.  *Jiminson*, 2017 WL 4227002, at \*6.  Lastly, the legislative history reveals that the intent of the statute was to minimize any incentive for both the insurer and the beneficiary to delay settlement of benefit claims.  *See McMillen*, 2014 WL 1270535, at \*10.  Accordingly, this Court does not read the section to require a formal claim nor necessarily constitute a penalty.  However, to read the statute as to not require an insurer to have notice runs counter to the delicate balance of also disincentivizing beneficiaries from delaying settlement of their benefit claims.  *See Burton*, 669 F. App'x at 830; *McMillen*, 2014 WL 1270535, at \*10.  Therefore, the Court finds that in a life insurance matter, the insurer should at least have notice of the death of the policy holder before section 10172.5 is triggered.

### 3. Whether Dearborn had Notice of Borum's Death

Here, Workman filed a claim in June 2016. (Joint Stip. ¶ 3.) Dearborn asserts that it did not have constructive notice of Borum's death until Workman submitted her claim, Workman does not dispute this assertion. (Pl.'s SS ¶ 24.) Then, on June 15, 2016, Dearborn denied Workman's claim, but, on February 27, 2017, Dearborn voluntarily overturned its denial and paid Workman $37,000 for the Policy Benefit. (Pl.'s SS ¶ 9; Joint Stip. ¶ 4.) And pursuant to section 10172.5, Dearborn also paid $179.91 in interest, for the period from June 1, 2016 through the date of the Policy Benefit payment. (Joint Stip. ¶ 4.) Because the Court reads the statute to require notice as a condition precedent and Dearborn did not have notice of Borum's death until Workman submitted her claim. Accordingly, here is such an instance where an insurer could not pay a claim within 30 days of the date of death. Therefore, the limited exception applies, and Dearborn owes interest as of June 1, 2016, and not as of June 2002.

Thus, the Court **GRANTS** Dearborn's Motion and **DENIES** Workman's Motion as to this claim.

### B. UNJUST ENRICHMENT AND OTHER EQUITABLE RELIEF

#### 1. Disgorgement

**Workman alleges that Dearborn failed to pay statutory interest, and accordingly, she seeks disgorgement of the profits wrongfully retained by Dearborn. (Pl.'s Opp'n to Def.'s Mot. (Pl.'s Opp'n.) 6, ECF No. 46.) Dearborn responds by asserting that there is no basis for Workman's claim for disgorgement because Dearborn did not wrongly withhold any payment from Workman. (Def.'s Mot. 5–6.)**

**"'Disgorgement' is simply a form of 'restitution measured by the defendant's wrongful gain' rather than by the plaintiff's loss and is often described as an accounting for profits."** ***Depot, Inc. v. Caring for Montanans, Inc.***, **915 F.3d 643, 653 (9th Cir., 2019). This remedy merely requires the**

defendant to disgorge gains received from improper use of the plaintiff's property or entitlements. **_Id._**

The Court finds that there is no basis for Workman's claim for disgorgement. As explained above, Dearborn did not fail to pay statutory interest, and accordingly, Dearborn did not wrongly withhold policy benefits due to Workman. Thus, Dearborn did not wrongfully gain since there was no improper use of Workman's property or entitlement. *See generally Depot, Inc.*, 915 F.3d at 653. Therefore, the Court **DENIES** Workman's Motion as to her unjust enrichment claim against Dearborn.

### 2. Prejudgment Interest

Workman alternatively requests the Court exercise its discretion to award her interest as a result of Dearborn's unjust enrichment as demanded by equity. (Pl.'s Mot. 22–24.) Workman asserts that simply because Dearborn earned interest on an amount she could have collected years prior, Dearborn was unjustly enriched, and she should be entitled to part or all of the interest accrued. (Pl.'s Mot. 22–24.) However, as the Court determined above, Dearborn does not owe Workman any portion of the interest under the California Insurance Code section 10172.5, and therefore, does not owe any prejudgment interest. *Dishman v. UNUM Life Ins. Co. of America*, 269 F.3d 974, 988 (9th Cir. 2001). Furthermore, Workman fails to articulate an alternative basis for why she is warranted this amount apart from her conclusory arguments of fairness and equity. Therefore, the Court **DENIES** summary judgment as to this claim.

### C. Attorneys' Fees

Dearborn prematurely moves for summary judgment to establish that Workman is not entitled to attorney's fees. (Def.'s Mot. 7–8.) Local Rule 54-7 states that "[a]ny motion or application for attorneys' fees shall be served and filed within fourteen (14) days after the entry of judgment or other final order, unless otherwise ordered by the Court." Accordingly, the Court **DECLINES** to make a determination regarding attorneys' fees.

# V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Dearborn's motion for summary judgment (ECF No. 31) and **DENIES** Workman's motion for summary judgment (ECF No. 32). The Court also **DECLINES** to rule on Dearborn's motion regarding attorney's fees. The Court vacates all calendared dates, Dearborn is ordered to submit a proposed judgment within seven (7) days from the date of this order.

**IT IS SO ORDERED.**

January 22, 2020

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**